**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

FRANK AUDIA, ALLEN BAKER, EDWIN
BUCZEK, JOSEPH CRISTODERO, JOHN
DIMEGLIO, RICHARD DUGAS, JESS GILLIAM,
THADDEUS LYJAK, WARREN PRIEBE,
ANTHONY SANTAVY, HORST SKIBBA,
and CLARENCE WAGNER,

    Plaintiffs,                                Case No. 10-10209
                                                   Hon. Gerald E. Rosen

v.

NEWCOR, INC.,

    Defendant.
_____/

**OPINION AND ORDER REGARDING
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        July 23, 2010      

PRESENT: Honorable Gerald E. Rosen
                    Chief Judge, United States District Court

## I. INTRODUCTION

The twelve Plaintiffs in this case are former hourly employees of the Wilson Automation Division of Defendant Newcor, Inc. who retired between 1988 and 1996. In this suit, commenced on January 15, 2010, Plaintiffs seek to enforce an alleged contractual promise made by Defendant to provide lifetime medical insurance benefits to Plaintiffs and their dependents. According to Plaintiffs, Defendant breached this alleged

obligation when the company sent them a letter in early January of 2010 announcing that it planned to terminate their prescription drug benefits and all medical insurance benefits for their spouses effective February 1, 2010. Based on this alleged breach, Plaintiffs have asserted claims under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Shortly after they commenced this suit, Plaintiffs filed a motion for a preliminary injunction, seeking an order requiring Defendant to reinstate and maintain, during the pendency of this litigation, the level of medical insurance benefits provided to Plaintiffs prior to January 1, 2008. During the course of the briefing on this motion, this Court issued a ruling in a related case brought by a different group of retirees of Defendant Newcor who, like Plaintiffs here, alleged that Defendant had breached a promise of lifetime health care benefits. *See Burcicki v. Newcor, Inc.,* ___ F. Supp.2d ___, 2010 WL 1131451 (E.D. Mich. Mar. 23, 2010). In *Burcicki,* this Court determined that two of the plaintiff retirees were required to submit their claims to arbitration under a dispute resolution provision in the agreement giving rise to their claims of lifetime benefits. As the parties have recognized, the decision in *Burcicki* appears to portend a similar outcome here.

Plaintiffs' motion has been fully briefed by the parties, and each side has been given the opportunity to address the implications of the *Burcicki* decision to the claims advanced in this case. Having reviewed the parties' briefs and accompanying exhibits, as

obligation when the company sent them a letter in early January of 2010 announcing that it planned to terminate their prescription drug benefits and all medical insurance benefits for their spouses effective February 1, 2010. Based on this alleged breach, Plaintiffs have asserted claims under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), and under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Shortly after they commenced this suit, Plaintiffs filed a motion for a preliminary injunction, seeking an order requiring Defendant to reinstate and maintain, during the pendency of this litigation, the level of medical insurance benefits provided to Plaintiffs prior to January 1, 2008. During the course of the briefing on this motion, this Court issued a ruling in a related case brought by a different group of retirees of Defendant Newcor who, like Plaintiffs here, alleged that Defendant had breached a promise of lifetime health care benefits. *See Burcicki v. Newcor, Inc.,* ___ F. Supp.2d ___, 2010 WL 1131451 (E.D. Mich. Mar. 23, 2010). In *Burcicki,* this Court determined that two of the plaintiff retirees were required to submit their claims to arbitration under a dispute resolution provision in the agreement giving rise to their claims of lifetime benefits. As the parties have recognized, the decision in *Burcicki* appears to portend a similar outcome here.

Plaintiffs' motion has been fully briefed by the parties, and each side has been given the opportunity to address the implications of the *Burcicki* decision to the claims advanced in this case. Having reviewed the parties' briefs and accompanying exhibits, as

well as the remainder of the record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Plaintiffs' motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. As explained below, the Court concludes, in accordance with its ruling in *Burcicki,* that Plaintiffs' claims must be submitted to arbitration.

## II. FACTUAL BACKGROUND

Plaintiffs are twelve former hourly employees of the Wilson Automation Division of Defendant Newcor, Inc., an automotive supplier. According to their first amended complaint, Plaintiffs' retirement dates from Defendant's Wilson Automation Division spanned from 1988 to 1996. As hourly employees, Plaintiffs were represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and UAW Local 155 at the time of their retirement.

The UAW and Defendant were signatories to a series of collective bargaining agreements ("CBAs") covering bargaining unit employees at Defendant's Wilson Automation Division in Warren, Michigan. The last such CBA was dated August 28, 1993 (the "1993 CBA") and had a four-year term. According to Plaintiffs' complaint, "[t]he UAW and Newcor intended, as a result of the negotiations for [the] 1993 CBA, that Wilson Automation employees who retired prior to April 1, 1996 would have lifetime medical insurance benefits at the levels set forth in the 1993 CBA for retirees and for dependents of retirees while the retiree was living." (First Amended Complaint at ¶ 27.)

3

In the spring of 1996, Defendant sold the assets of its Wilson Automation Division, and it advised the UAW that upon completion of the sale, Defendant would no longer employ any of the employees in the bargaining unit covered by the 1993 CBA. Accordingly, Defendant and the union entered into a May 2, 1996 Memorandum of Agreement ("MOA"), which called for the termination of the 1993 CBA and of all employees covered by this agreement upon the closing date of the sale of the Wilson Automation Division's assets. The MOA further provided that Defendant would "continue to provide medical insurance to those retirees who retired . . . prior to April 1, 1996 and met the eligibility requirements for medical insurance at the time of retirement and are currently receiving medical insurance benefits." (Plaintiff's Motion, Ex. 3-2, 5/2/1996 MOA at ¶ 8.) Finally, the MOA provided:

> This Memorandum of Agreement is a complete and final settlement by and between the parties with respect to the sale of the Company and the termination of the [1993 CBA] and fully and completely releases and discharges the Company from any and all obligations to the Union and its members with respect to the sale and termination of the covered employees. Further, this Memorandum of Agreement supersedes and cancels all previous agreements between the parties whether express or implied and cannot be modified except by written agreement executed by an international representative of UAW, Local 155 and an officer of Newcor, Inc. The Union and Company agree that neither will commence any action or proceeding in any court or before any tribunal concerning alleged rights which arise from the sale of the Company unless such disputes concern interpretation, application of specific terms contained[] herein, or performance of the specific terms of this agreement. Should any such legitimate disputes occur, they shall be resolved using the Arbitration procedure outlined in Paragraph 8 of the [1993 CBA].

(*Id.* at ¶ 12.)[1]

According to Plaintiffs' complaint, after the execution of the MOA, Defendant "provided medical insurance benefits, including prescription drugs with a $3.00 co[-]pay, for Plaintiffs and their dependent spouses without interruption until December 31, 2008." (First Amended Complaint at ¶ 31.)[2] Effective January 1, 2008, however, Defendant "unilaterally modified Plaintiffs' medical insurance benefits by increasing the prescription drug co[-]pay from $3.00 for all prescription drugs to $10.00 for generic drugs and $20.00 for brand name drugs." (First Amended Complaint at ¶ 39.)[3] Then, by letter dated January 4, 2010, Defendant "announced that it would terminate prescription drug benefits for Wilson Automation retirees and all medical insurance benefits for the

---

[1]Paragraph 8 of the 1993 CBA was part of a larger set of provisions establishing procedures for the resolution of grievances between represented workers and Defendant, and it authorized the union to request binding arbitration if it was not satisfied with the company's resolution of a grievance. (*See* Plaintiff's Motion, Ex. 3-1, 1993 CBA at 8-9.) The last paragraph of this dispute resolution portion of the 1993 CBA provided that "[d]isputes growing out of the interpretation of this Agreement shall follow the Grievance Procedure hereinabove set forth." (*Id.* at ¶ 15.)

[2]Plaintiffs allege that in late 2001, Defendant informed them "that it intended to terminate retiree health care benefits effective December 31, 2001," and that three of them responded by commencing a class action suit in this Court, *Santavy v. Newcor, Inc.,* Case No. 01-74765. (First Amended Complaint at ¶¶ 32-33.) In early 2002, however, Defendant filed for Chapter 11 bankruptcy protection, and the *Santavy* suit was administratively closed. According to Plaintiffs, "[d]uring bankruptcy and after Newcor emerged from bankruptcy, Newcor maintained medical insurance benefits at the levels set forth in the 1993 CBA." (*Id.* at ¶ 38.)

[3]The Court notes that the complaint's reference to the continuation of full benefits "until December 31, 2008," (*id.* at ¶ 31), is inconsistent with this allegation of a change in prescription drug co-pays "[e]ffective January 1, 2008," (*id.* at ¶ 39). It appears from the record that the former reference is mistaken, and that the correct date intended by Plaintiffs would be December 31, 2007.

spouses of retirees effective February 1, 2010." (*Id.* at ¶ 40.)

In Plaintiffs' view, by reducing the medical benefits provided to them and their dependents, and by threatening still further reductions, Defendant has breached an obligation owed to Wilson Automation retirees under the 1993 CBA and the 1996 MOA. Accordingly, Plaintiffs commenced this suit on January 15, 2010, asserting a breach of contract claim under § 301 of the LMRA, 29 U.S.C. §185(a), as well as a claim for benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).

## III. ANALYSIS

### A. The Standards Governing Plaintiffs' Motion

Through the present motion, Plaintiffs seek an order compelling Defendant to reinstate and maintain, through the pendency of this litigation, the medical insurance benefits allegedly granted to them and their dependent spouses under the 1993 CBA and 1996 MOA. The decision whether to award such preliminary injunctive relief is governed by a familiar four-part standard, under which the Court must consider (i) whether Plaintiffs, as the moving parties, have a strong likelihood of success on the merits, (ii) whether they would suffer irreparable injury in the absence of injunctive relief, (iii) whether an award of preliminary injunctive relief would cause substantial harm to others, and (iv) whether the public interest would be served by the requested award. *Sandison v. Michigan High School Athletic Association, Inc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). These four considerations "are factors to be balanced and not prerequisites that must be satisfied," and "are not meant to be rigid and unbending requirements."

*American Imaging Services, Inc. v. Eagle-Picher Industries, Inc. (In re Eagle-Picher Industries, Inc.),* 963 F.2d 855, 859 (6th Cir. 1992). "Moreover, a district court is not required to make specific findings concerning each of the four factors . . . if fewer factors are dispositive of the issue." *Jones v. City of Monroe,* 341 F.3d 474, 476 (6th Cir. 2003).

**B.  Plaintiffs Cannot Establish a Likelihood of Success on the Merits of Their Claims for Judicial Relief, Where They Are Required Under the 1993 CBA and 1996 MOA to Submit Their Claims to Arbitration.**

As noted at the outset, this Court recently issued a ruling in *Burcicki v. Newcor, Inc.,* ___ F. Supp.2d ___, 2010 WL 1131451 (E.D. Mich. Mar. 23, 2010), a case in which seven retired employees of Defendant Newcor or a subsidiary challenged Newcor's termination of health care benefits that, in the retirees' view, had been guaranteed to them for life under a series of collective bargaining agreements and related agreements. As pertinent here, the Court held that two of the plaintiff retirees were required, under the terms of the "Termination Agreement" giving rise to their claims of lifetime medical insurance coverage, to submit their LMRA and ERISA claims to arbitration. *Burcicki,* 2010 WL 1131451, at *9-*15. In opposing Plaintiffs' motion in the present case, Defendant Newcor contends that the terms of the 1996 MOA likewise compel Plaintiffs to submit their similar LMRA and ERISA claims to arbitration. The Court agrees, finding no basis in Plaintiffs' submissions to depart from or distinguish its ruling in *Burcicki.*

As the Supreme Court has emphasized, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to

7

submit." *AT&T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S. Ct. 1415, 1418 (1986) (internal quotation marks and citations omitted). Thus, this case might potentially be distinguishable from *Burcicki* on the ground that the arbitration provision here, unlike the one in *Burcicki,* might not call for arbitration of the particular dispute being pursued by Plaintiffs. Notably, however, Plaintiffs have not advanced such an argument, nor do they even attempt to identify any material difference between the language of the MOA in this case and the Termination Agreement in *Burcicki* that might warrant different outcomes in the two cases. Rather, Plaintiffs evidently have elected to forgo any effort to distinguish *Burcicki* on this ground.

In any event, left to its own devices, the Court cannot say that the arbitration provisions in this case and in *Burcicki* are sufficiently distinguishable to dictate a different result here. In *Burcicki,* 2010 WL 1131451, at *9, the arbitration clause broadly provided that "[a]ll disputes or claims arising out of any alleged violation of the CBA, its modifications as contained herein, and this Termination Agreement will be resolved by arbitration." Here, by comparison, the relevant paragraph of the 1996 MOA states in pertinent part:

> The Union and Company agree that neither will commence any action or proceeding in any court or before any tribunal concerning alleged rights which arise from the sale of the Company unless such disputes concern interpretation, application of specific terms contained[] herein, or performance of the specific terms of this agreement. Should any such legitimate disputes occur, they shall be resolved using the Arbitration procedure outlined in Paragraph 8 of the [1993 CBA].

(Plaintiff's Motion, Ex. 3-2, 5/2/1996 MOA at ¶ 12.) Like the arbitration clause in

8

*Burcicki,* then, this provision broadly calls for any "legitimate disputes" concerning the "interpretation, application of specific terms [of the MOA], or performance of the specific terms of" the MOA to be resolved through arbitration. There is no question that Plaintiffs' claims in this case lie within the scope of this clause, as they entail the interpretation and application of the MOA provision requiring Defendant to "continue to provide medical insurance," (*see id.* at ¶ 8), to a specified class of retirees that allegedly encompasses the twelve Plaintiffs here.

To be sure, the sentence that immediately precedes this arbitration provision recites the agreement of "[t]he Union and Company" that neither will pursue any relief, whether "in any court or before any tribunal," unless a dispute between these contracting parties "concern[s] interpretation, application of specific terms [of the MOA], or performance of the specific terms of" the MOA. (*Id.* at ¶ 12.) In Plaintiffs' view (albeit relegated to a footnote), this reference to "[t]he Union and Company" should be read as limiting the obligation to arbitrate, as set forth in the following sentence, to these two parties alone. (*See* Plaintiffs' Reply Br. at 2 n.1.) Yet, this preceding sentence merely restricts the universe of disputes that these two parties, the union and Defendant, may pursue before the appropriate tribunal — which, of course, is limited in the very next sentence to the arbitral forum. Thus, while this provision presumably would not prevent third parties, such as the Plaintiff retirees here, from pursuing other sorts of disputes "concerning alleged rights which arise from the sale of the Company," (*id.* at ¶ 12), it does nothing to alter or diminish the requirement in the next sentence that "any . . .

9

disputes" concerning the interpretation, application, or performance of the terms of the MOA "shall be resolved using the Arbitration procedure outlined in Paragraph 8 of the Labor Agreement." *See Exelon Generation Co. v. Local 15, International Brotherhood of Electrical Workers,* 540 F.3d 640, 645 (7th Cir. 2008) (finding that an arbitration clause in a collective bargaining agreement encompassed a dispute over retiree medical benefits, where the clause did not "define an arbitrable grievance as one between the company and an employee," but rather applied to any dispute over the interpretation or application of any provision of the CBA).[4]

Having addressed this potential factual basis for distinguishing *Burcicki,* the Court turns to the principal argument advanced by Plaintiffs in support of a different outcome here — namely, that *Burcicki* was, in their view, wrongly decided. (*See* Plaintiffs' Reply Br. at 6-11.) Not surprisingly, the Court believes otherwise. What is more, the cases cited by Plaintiffs as purportedly evidencing the defects in *Burcicki*'s reasoning were addressed at length in *Burcicki* itself. Plainly, then, the Court and Plaintiffs' counsel will have to agree to disagree on the proper reading of this case law.

Because this case law was discussed extensively in *Burcicki,* little more need be added here. It suffices to reiterate a point made in *Burcicki,* 2010 WL 1131451, at *12-*13 — namely, that the decisions principally relied upon by Plaintiffs stand for the

---

[4]The Court returns below to the question whether a third party may be bound by the MOA's arbitration provision. The only point here is that nothing in the language of the arbitration provision itself expressly restricts its reach to the union and Defendant.

10

proposition that retirees have an independent right "to resolve disputes over contractual benefits directly with the former employer without the union's involvement." *UAW v. Yard-Man, Inc.,* 716 F.2d 1476, 1486 (6th Cir. 1983). As a corollary to this rule, the Sixth Circuit has held that a union must secure the consent of a retiree before it may pursue a claim for contractual benefits on the retiree's behalf. *See United Steelworkers v. Cooper Tire & Rubber Co.,* 474 F.3d 271, 282-83 (6th Cir. 2007); *Cleveland Electric Illuminating Co. v. Utility Workers Union, Local 270,* 440 F.3d 809, 817 (6th Cir. 2006). Yet, this case law is silent on the precise issue presented here — namely, whether a retiree who brings an independent claim for contractual benefits conferred under a collective bargaining agreement negotiated by a union and the retiree's former employer is bound by the dispute resolution provisions of the agreement giving rise to his or her claim.

In the absence of binding precedent on this specific point, the Court finds it instructive to look to general principles of contract law. As the Sixth Circuit has recognized, a retiree who pursues a claim for benefits conferred under a CBA is properly viewed as a third-party beneficiary. *See Yard-Man,* 716 F.2d at 1486. Yet, it is well established that "third-party beneficiaries generally have no greater rights in a contract than does the promisee." *United Steelworkers v. Rawson,* 495 U.S. 362, 375, 110 S. Ct. 1904, 1913 (1990). Moreover, as a "general rule," "the promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract." *Schneider Moving & Storage, Co. v. Robbins,* 466 U.S. 364, 370,

11

104 S. Ct. 1844, 1848 (1984). In accordance with these principles, then, Defendant (as the promisor) ordinarily would be entitled to assert any available contract-based defenses against Plaintiffs as third-party beneficiaries, and this seemingly would include the defense that Plaintiffs' claims are arbitrable under paragraph 12 of the MOA. Indeed, to hold otherwise would deny Defendant of the benefit of the bargain it negotiated with Plaintiffs' representative in collective bargaining — namely, that disputes over the interpretation or application of the MOA must be resolved through arbitration rather than in court.[5]

---

[5]The Court recognizes that in *Robbins,* 466 U.S. at 370-76, 104 S. Ct. at 1848-51, the Supreme Court held that the third-party beneficiaries in that case — the trustees of employee benefit funds that were referenced and incorporated into collective bargaining agreements executed by the defendant employers, and into which the employers were required to contribute under the terms of the CBAs — were not bound by arbitration clauses in the underlying CBAs. In so ruling, the Court determined that the usual presumption of arbitrability of disputes between a union and an employer did not apply, reasoning that requiring trustees of employee benefit funds to arbitrate their disputes with an employer "would promote labor peace only indirectly, if at all." *Robbins,* 466 U.S. at 372, 104 S. Ct. at 1849 (footnote omitted); *see also Anderson v. Alpha Portland Industries, Inc.,* 752 F.2d 1293, 1295-98 (8th Cir. 1985) (relying on *Robbins* to conclude that no presumption of arbitrability applied to claims for insurance benefits brought by a group of retirees).

The Court finds *Robbins* (as well as *Anderson)* distinguishable here, for largely the same reasons already explained in *Burcicki,* 2010 WL 1131451, at *11. As noted in that case, the Sixth Circuit has expressly held that "the presumption of arbitrability applies to disputes over retirees' benefits if the parties have contracted for such benefits in their collective bargaining agreement and if there is nothing in the agreement that specifically excludes the dispute from arbitration." *Cleveland Electric,* 440 F.3d at 816; *see also Exelon Generation,* 540 F.3d at 646-47. Moreover, and as discussed below, Plaintiffs' claims here arise directly under the pertinent terms of the MOA. Under these circumstances, it is highly likely that the parties to the MOA intended that any such claims requiring the interpretation or application of the MOA be resolved through arbitration, whether such a claim is being pursued by the union or a retiree formerly represented by the union. In *Robbins,* 466 U.S. at 373-74, 104 S. Ct. at 1849-50, in contrast, the trustees had authority under separate trust agreements to pursue any legal remedies deemed appropriate in their discretion, and the Supreme Court found no basis under the trust agreements

Ample case law confirms this conclusion. Courts in this District have held that third-party beneficiaries are bound by an arbitration clause in a contract giving rise to their claims. *See Detroit Edison Co. v. Burlington Northern & Santa Fe Railway Co.,* 442 F. Supp.2d 387, 392-93 (E.D. Mich. 2006); *Ripmaster v. Toyoda Gosei, Co.,* 824 F. Supp. 116, 117-18 (E.D. Mich. 1993); *see also LaSalle, Inc. v. International Brotherhood of Electrical Workers Local No. 665,* 336 F. Supp.2d 727, 729-31 (W.D. Mich. 2004). More generally, the Sixth Circuit and other courts have found that "a nonsignatory may be bound to an arbitration agreement under an estoppel theory when the nonsignatory seeks a *direct* benefit from the contract while disavowing the arbitration provision." *Javitch v. First Union Securities, Inc.,* 315 F.3d 619, 629 (6th Cir. 2003); *see also International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411, 418 (4th Cir. 2000) (observing that "a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him"); *American Bureau of Shipping v. Tencara Shipyard S.P.A.,* 170 F.3d 349, 353 (2d Cir. 1999).

In this case, Plaintiffs are quite clearly seeking a direct benefit from the MOA, claiming a right to continued medical insurance benefits that was negotiated by the union on their behalf and then reduced to writing in paragraph 8 of the MOA. Although the

---

or the corresponding collective bargaining agreements for concluding that this broad authority was conditioned upon the exhaustion of the contractual remedies set forth in the CBAs.

union and Defendant need not have negotiated on the subject of retiree benefits or set forth their agreement in the terms of the MOA, *see Cleveland Electric,* 440 F.3d at 815, they elected to do so, and Plaintiffs now seek to enforce these terms. Plaintiffs have not explained why they should be permitted to pursue these contractual benefits, while at the same time eschewing an obligation, set forth in a nearby paragraph of the very same contract, to arbitrate any disputes over the interpretation or application of the terms of the MOA. Under the relevant case law, as discussed at length in *Burcicki* and addressed again here, the Court finds that Plaintiffs' breach of contract claims under § 301 of the LMRA must be resolved through arbitration.

As their final argument on the question of arbitrability, Plaintiffs argue that their ERISA claims stand apart from their breach of contract claims, and therefore should not lie within the ambit of the MOA's arbitration provision. Again, the Court addressed (and rejected) precisely the same contention in *Burcicki,* 2010 WL 1131451, at *14-*15, and this analysis need not be repeated here. There, as here, the plaintiff retirees' ERISA claims were "predicated entirely" upon promises allegedly made by Defendant Newcor in the collective bargaining agreement, and not the terms of any ERISA plan. *Burcicki,* 2010 WL 1131451, at *15. Indeed, in the present case, it does not appear that any ERISA plan documents have even been made a part of the record, nor have Plaintiffs linked their claims for continued medical benefits to the language of any such plan. Rather, Plaintiffs' ERISA claims, like their LMRA claims, turn entirely upon the interpretation

14

and application of the MOA, and these are matters to be resolved through arbitration.[6]

## C. In Light of the Court's Determination That Plaintiffs' Claims Are Subject to Arbitration, the Remaining Factors of the Preliminary Injunction Standard Do Not Support an Award of Preliminary Injunctive Relief.

Having concluded that Plaintiffs' claims are subject to arbitration, the Court need only briefly address the remaining three factors of the standard for awarding preliminary injunctive relief. First, as to whether Plaintiffs would suffer irreparable harm absent the preliminary injunctive relief they seek, the Court found in *Burcicki,* 2010 WL 1131451, at *15, that the plaintiff retirees in that case had not identified an irreparable injury, where a damage award would compensate them for any out-of-pocket costs they incurred in maintaining the health care benefits that Defendant Newcor had ceased to provide. The Court reaches the same conclusion here. Moreover, the arbitration process called for under the MOA affords Plaintiffs an opportunity for complete (and presumably expeditious) relief, thereby mitigating the need for a judicial award of preliminary injunctive relief pending the outcome of this process.

Next, regarding the harm caused to others if a preliminary injunction were issued, Defendant has made no effort to identify any such harm, so it cannot be said that this factor militates against the award sought by Plaintiffs. Similarly, as to the question

---

[6]As a practical matter, even if the Court were to conclude that Plaintiffs' ERISA claims were not subject to arbitration, the Court would nonetheless be inclined to stay these proceedings pending the arbitration of Plaintiffs' LRMA claims, since the resolution of those claims would likely be dispositive of Plaintiffs' ERISA claims as well. *See Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir. 2000) ("[I]f the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.").

whether the public interest would be served through the requested award, the Court reiterates its finding in *Burcicki,* 2010 WL 1131451, at *16, that this factor "does not tip strongly in favor of one party or the other."

In sum, having considered and balanced the four factors of the pertinent standard, the Court finds that the award of preliminary injunctive relief sought by Plaintiffs is not warranted. In particular, Plaintiffs have not demonstrated a likelihood of success on the merits of their claims for judicial relief, where these claims are subject to arbitration under the terms of the MOA giving rise to Plaintiffs' claims. The remaining factors of the preliminary injunction inquiry do not outweigh this failure to establish a likelihood of success on the merits. Rather, Plaintiffs must seek relief in the arbitral forum dictated by the MOA.

It remains only to determine the appropriate disposition of this case while Plaintiffs' claims are being arbitrated. As the Fifth Circuit has observed, "[t]he weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992). The Sixth Circuit has reached the same conclusion, albeit in an unpublished decision, *see Hensel v. Cargill, Inc.,* No. 99-3199, 1999 WL 993775, at *4 (6th Cir. Oct. 19, 1999), and courts in this District likewise have held that a case may be dismissed when all of the asserted claims are subject to arbitration, *see Shammami v. Broad Street Securities, Inc.,* 544 F. Supp.2d 585, 588 (E.D. Mich. 2008); *Ozormoor v. T-Mobile USA, Inc.,* No. 08-11717, 2008 WL 5188772, at *1 (E.D. Mich. Dec. 9, 2008).

16

Accordingly, because all of Plaintiffs' claims are subject to arbitration, the Court finds that this case should be dismissed, with the parties free to return to the Court at the conclusion of the arbitration to request that the arbitrator's award be confirmed, modified, or vacated.

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Plaintiffs' February 8, 2010 motion for preliminary injunction (docket #5) is DENIED. IT IS FURTHER ORDERED, in accordance with the rulings in this opinion and order, that Plaintiffs are directed to proceed with the arbitration of their claims pursuant to paragraph 12 of the May 2, 1996 Memorandum of Agreement giving rise to these claims.

                            s/Gerald E. Rosen
                            Chief Judge, United States District Court

Dated: July 23, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 23, 2010, by electronic and/or ordinary mail.

                            s/Ruth A. Gunther
                            Case Manager